**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roy L. BARTON, Defendant–Appellant.**

**No. 92–30304.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1993.

Decided June 15, 1993.

Judy Clarke, Asst. Federal Public Defender, Spokane, WA, for defendant-appellant.

Donald E. Kresse, Jr., Asst. U.S. Atty., Yakima, WA, for plaintiff-appellee.

Before: SKOPIL, ALARCON and BEEZER, Circuit Judges.

ALARCON, Circuit Judge:

Roy L. Barton appeals from the judgment of conviction and the sentence imposed following the entry of his conditional guilty plea to manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1). Law enforcement officers discovered a marijuana manufacturing operation in Barton's home during the execution of a search warrant. Barton moved to suppress the evidence seized from his home on the ground that the allegations in the search warrant affidavit concerning the presence of an odor of marijuana at his residence were false. At the time of the suppression hearing, the marijuana plants that were seized by the officers had decomposed due to the officers' failure to place the plants in ventilated plastic bags. Barton contends that the failure to preserve the marijuana plants deprived him of due process, because he was denied access to evidence that would have impeached material allegations in the affidavit for a search warrant.

This case presents the question whether the negligent destruction of evidence that tends to impeach allegations demonstrating probable cause in an affidavit for a search warrant violates due process. We must also decide whether the district court erred by including the male marijuana plants in calculating Barton's sentence under the Sentencing Guidelines. We affirm because there is no evidence that the officers acted in bad faith in placing the marijuana plants in unventilated plastic bags. We further conclude that the district court did not err by failing to exclude the male marijuana plants in calculating Barton's sentence under the Sentencing Guidelines.

## I.

## PERTINENT FACTS AND PROCEDURAL HISTORY

In December, 1991, an agent from the Drug Enforcement Administration told Detective Bruce Long of the Chelan County Sheriff's Office that Barton had ordered marijuana seeds from a foreign company. Detective Long located Barton's address at the county assessor's office. As part of a separate investigation, law enforcement officers obtained a warrant to search the home of one of Barton's neighbors. While that search was underway, Detective Long, Detective Jeffrey Middleton, and Deputy Steve Worden knocked on Barton's door. When Barton opened the door, both Detective Long and Detective Middleton smelled the odor of marijuana. The officers identified themselves and asked Barton if they could speak with him. Barton responded affirmatively and admitted the officers into his home.

Upon entry, the officers noticed that the odor of marijuana had become stronger.

After Barton invited the officers into his home, the officers told him that they had information that marijuana might be present in his residence. The officers advised Barton of his *Miranda* rights and asked if they could search his home. Barton called an attorney on the telephone. The attorney advised Barton not to consent to the search. Thereafter, Barton refused to consent to the search. Detective Long left to obtain a search warrant. Detective Middleton and Deputy Worden remained with Barton in his residence.

Detective Long returned to Barton's residence with a search warrant. The warrant was issued based on the allegations in Detective Long's affidavit that he smelled marijuana when Barton opened the door, and that the odor of marijuana became stronger once he stepped inside Barton's residence. Upon executing the warrant, the officers found approximately 105 marijuana plants in two rooms in Barton's residence. The officers photographed the plants and made a videotape of the areas where they were growing. The officers then cut the marijuana plants above the roots, placed them in plastic garbage bags, and stored them in the Drug Task Force's evidence vault. Barton presented evidence at the suppression hearing that the marijuana had substantially decomposed because it was placed in unventilated plastic bags. The Government does not dispute the fact that the plastic bags were not ventilated.

On January 14, 1992, Barton was charged in a two-count indictment. Count I charged Barton with manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1). Count II charged him with the establishment of a manufacturing facility used to manufacture marijuana, in violation of 21 U.S.C. § 856(a)(1).

On March 27, 1992, Barton filed a motion to dismiss and a motion to suppress the marijuana on the ground that the officers did not have probable cause to search his home. At the suppression hearing, Barton presented evidence that only marijuana plants with glandular trichomes emit an odor. Barton maintained that the marijuana plants seized from his home did not possess glandular trichomes. Barton argued that the officers' failure to preserve the marijuana denied him access to evidence that would have supported his contention that the plants did not emit an odor, and demonstrated that the allegations in the affidavit were false. The district court found that the officers did not act in bad faith in placing the plants in unventilated plastic bags, and denied the motions.

Thereafter, Barton entered a conditional guilty plea to count I of the indictment. The district court dismissed count II of the indictment pursuant to a plea agreement between the parties. Under the plea agreement, Barton preserved his right to appeal from the district court's order denying his motions to dismiss and to suppress the evidence seized from his home. At sentencing, the court excluded 37 of the marijuana plants, because the Government failed to demonstrate that those cuttings were "plants" within the meaning of 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1(c). Over Barton's objection, the district court included both the male and the female marijuana plants in calculating Barton's sentence under the Sentencing Guidelines. The court sentenced Barton to a term of 33 months imprisonment and 2 years of supervised release.

## II.

## DESTRUCTION OF THE MARIJUANA PLANTS

Barton contends that the district court erred in denying his motion to suppress the marijuana plants found in his home. He argues that the Government's failure to preserve the marijuana plants violated due process under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), because it denied him access to evidence that could have been used to impeach allegations in the affidavit for a search warrant. We review a district court's denial of a suppression motion de novo. *United States v. Prieto–Villa*, 910 F.2d 601, 604 (9th Cir. 1990). We review the district court's factual findings for clear error. *Id.*

The Supreme Court has instructed that the suppression of *exculpatory* evidence vio-

lates due process. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. The Court defined exculpatory evidence as evidence which is "favorable to an accused" and "material either to guilt or to punishment." *Id.* The Court later extended its holding in *Brady* to circumstances involving the loss or destruction of potentially exculpatory evidence by the government. *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). In *Trombetta,* the Court held that to rise to the level of a due process violation, evidence lost or destroyed by the government "must both possess an *exculpatory* value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (emphasis added). The Court later clarified its decision in *Trombetta* by holding that the Government's failure to preserve potentially exculpatory evidence does not automatically violate due process. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988). To establish a due process violation, a defendant must show that the evidence was destroyed in "bad faith." *Id.*

Barton argues that the marijuana evidence was exculpatory because its introduction into evidence at the suppression hearing would have impeached the allegations relied upon by the Government to show probable cause, and would have resulted in the exclusion of incriminating evidence against him. This argument is without merit. While it is true that "resolution of a suppression motion can and often does determine the outcome of the case," *United States v. Raddatz,* 447 U.S. 667, 678, 100 S.Ct. 2406, 2413–14, 65 L.Ed.2d 424 (1980), the successful suppression of incriminating evidence is unrelated to the actual culpability of an accused. *See id.* (a suppression hearing to resolve voluntariness of a confession is important to determine whether evidence should be suppressed under exclusionary rule, but is immaterial to "the criminal law objective of determining guilt or innocence"). Because the marijuana evidence was inculpatory, the failure to preserve this evidence does not amount to the destruction of exculpatory evidence in violation of *Brady* and its progeny.

This conclusion, however, does not end our inquiry. We must decide the novel question whether the destruction of evidence which had the potential at a suppression hearing to impeach allegations in an affidavit for a search warrant violates due process. Our application of the due process principles announced in *Brady, Trombetta,* and *Youngblood* has been limited to the destruction of exculpatory or potentially exculpatory evidence that would have been offered at the guilt or penalty phase of a criminal proceeding. *See, e.g., United States v. Belden,* 957 F.2d 671, 674 (9th Cir.) (officers' destruction of marijuana plants which defendant argued were material to calculating his sentence under Sentencing Guidelines did not violate due process, because destruction was not in bad faith and other evidence existed to support the sentence), *cert. denied,* — U.S. —, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992); *United States v. Heffington,* 952 F.2d 275, 280 (9th Cir.1991) (destruction of laboratory equipment allegedly used by defendant in manufacturing methamphetamine did not violate due process, where police disposed of the potentially exculpatory evidence in good faith and in accordance with established departmental procedures); *United States v. Cooper,* 983 F.2d 928, 931 (9th Cir.1993) (destruction of laboratory equipment allegedly used by defendant to manufacture methamphetamine violated due process where evidence was destroyed in bad faith and defendant was unable to obtain comparable exculpatory evidence by other reasonably available means).

The Supreme Court has not decided the question whether the destruction of evidence which had the potential at a suppression hearing to impeach allegations in an affidavit for a search warrant violates due process. The Court has held, however, that a criminal defendant has a right under the Fourth Amendment to challenge the truthfulness of statements made in an affidavit supporting a search warrant. *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). The Court reasoned in *Franks* that the Fourth Amendment's requirement of probable cause "would be reduced to a nullity if a police officer was able

to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." *Id.* at 168, 98 S.Ct. at 2682.

■ This rationale applies with equal force to the destruction of evidence which is necessary to impeach material allegations in an affidavit for a search warrant. By deliberately destroying impeaching evidence, an officer could feel secure that false allegations in his or her affidavit for a search warrant could not be challenged. Such a result would effectively deprive a criminal defendant of his Fourth Amendment right to challenge the validity of a search warrant. To protect the right of privacy, we hold that the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant.

■ In *Youngblood*, the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58, 109 S.Ct. at 337. There is no principled reason why this bad faith requirement should not be applied to a suppression hearing.

We have previously stated that "[a] police department's compliance with 'departmental procedure' should be regarded as an indication that the disposal of evidence was not performed in 'bad faith.' " *Heffington,* 952 F.2d at 281. The district court found that the officers stored the marijuana in plastic bags in accordance with an established departmental practice, in order to accommodate the space limitations in the evidence vault. The court based its finding on the following testimony by Detective Long on direct examination:

Ms. Byerly [the prosecutor]: What happened to the plants after they were seized?
Detective Long: We bagged them up in garbage bags and took them to our evidence vault.
Ms. Byerly: Is this normal procedure?
Detective Long: Right. Yes.

Ms. Byerly: Is there a, any policy that you're aware of in regard to storing of marijuana seized from marijuana grow operations with your office?
Detective Long: Well, that is, our normal procedure is to bag up the plants after they have been counted and take them to our evidence vault.
Ms. Byerly: How large is your evidence vault?
Detective Long: Our drug evidence vault is about 20 feet by 10 feet.

. . . .

Ms. Byerly: In your training and experience with marijuana plants, do you believe it's physically possible to store marijuana plants from marijuana grow operations seized by your department in their original state?
Detective Long: No.
Mr. Stiley: Excuse me Your Honor. What's original state mean?
Ms. Byerly: How they appeared at the time they were harvested or counted.
Detective Long: It would not be possible for our small department to do that, no.

The district court did not make a finding regarding whether departmental practice required that the marijuana be stored in *ventilated* plastic bags. This factual question was not explored by either party.

Barton contends that the failure to ventilate the bags in this matter constituted a bad faith effort to destroy evidence. He asserts that Detective Long knew that the question whether the marijuana plants emitted a discernible odor would be important evidence at a suppression hearing, and that this awareness is sufficient to establish that he acted in bad faith in failing to ventilate the bags in which the marijuana was stored. Barton relies on *Cooper* 983 F.2d at 931, in which we stated that "[t]he presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *Id.* (citing *Youngblood,* 488 U.S. at 56–57 n. *, 109 S.Ct. at 336 n. *).

Barton argues that the following testimony shows that Detective Long acted in bad faith

in placing the marijuana in unventilated plastic bags:

> Mr. Stiley [defense counsel]: You know that it is quite material to the sentencing in these cases how many plants there are?
>
> Detective Long: That's correct.
>
> Mr. Stiley: And although one cannot maintain plants in their original state indefinitely, do you realize that if you cut a hole in a plastic bag, the plant won't rot?
>
> Detective Long: That's correct.
>
> Mr. Stiley: *And you realize that the condition of the plants is material when we get to Court in determining what odor they were or were not capable of generating and to what extent?*
>
> Detective Long: *That's correct. I believe [sic] holes were punched in the plastic bags.*
>
> Mr. Stiley: Thank you.

(emphasis added).

The record does not support Barton's contention that the officers *knowingly* placed the marijuana in unventilated plastic bags for the purpose of destroying it. To the contrary, Detective Long testified that he believed the plastic bags were ventilated. Detective Long's testimony was not contradicted at the suppression hearing. No evidence was presented to demonstrate that the officers deliberately destroyed evidence in order to insulate the allegations concerning the odor of the plants from impeachment. At most, Detective Long's testimony reflects negligence in failing to make sure the plastic bags were ventilated. The Supreme Court has held that the negligent destruction of evidence does not violate due process. *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337–38. The district court's finding that the Government's failure to preserve the marijuana plants was not in bad faith is not clearly erroneous. The district court did not err in determining that the Government's negligent destruction of the marijuana plants did not violate due process.

### III.

### SENTENCING GUIDELINES

■ Barton contends that the district court erred by failing to exclude the male

marijuana plants seized from his home in calculating his sentence under the Sentencing Guidelines. Barton argues that male marijuana plants do not contain Tetrahydrocannabinol (THC), and thus have no drug abuse potential. Although Barton correctly notes that the Guidelines themselves do not distinguish between male and female marijuana plants, he argues that the lack of such a distinction violates due process. We review de novo the question whether a Guideline is constitutional. *United States v. Williams,* 891 F.2d 212, 214 (9th Cir.1989), *cert. denied,* 494 U.S. 1037, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990).

Barton's argument that only female marijuana plants should have been used to calculate his offense level under the Sentencing Guidelines is contrary to our recent precedent. In *United States v. Traynor,* 990 F.2d 1153 (9th Cir.1993), we held that the failure to distinguish between male and female marijuana plants in sentencing an offender under the Sentencing Guidelines does not violate the Constitution, despite evidence suggesting that male marijuana plants contain little or no THC. *Id.* The district court did not err by including the male marijuana plants in calculating Barton's sentence under the Sentencing Guidelines.

AFFIRMED.