**UNITED STATES of America,**
**Appellee,**

v.

**Kelvin JELKS, Defendant–Appellant,**

No. 01–1587.

United States Court of Appeals,
Second Circuit.

Jan. 3, 2003.

Mark D. Hosken, Assistant Federal Public Defender, Rochester, NY, for Defendant–Appellant.

Everado A. Rodriguez, Assistant United States Attorney, Rochester, NY, for Appellee.

Present: MINER, CABRANES, and POOLER, Circuit Judges.

SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 3rd day of January, two thousand and three.

Appeal from judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*) after a trial jury convicted Kelvin Jelks of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possessing a firearm that had been illegally altered, in violation of 26 U.S.C. § 5871, and possessing a firearm that was not registered to him in the National Firearm Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is REMANDED.

On May 7, 1998, Kelvin Jelks ("Defendant–Appellant") was convicted in the County Court of Monroe County, New York of felony possession of a controlled substance in the fifth degree. Defendant–Appellant was paroled August 7, 2000 and went to live with his daughter, Le'Tasha Jelks.

On October 4, 2000, Defendant–Appellant's parole officer, Cynthia Mooney, and two of her colleagues visited Le'Tasha Jelks' apartment for the purpose of conducting a "routine home visit." It is undisputed that, at the time of the visit, Mooney had no reason to believe that Defendant–Appellant had violated the terms of his parole. Le'Tasha Jelks answered the door and informed Mooney that her father was not home. Mooney advised Ms. Jelks that she and her colleagues had the right to search her father's "residence, property and person any time [they] felt that there was a need to do so." Mooney then asked whether the trio could search Defendant–Appellant's bedroom. Le'Tasha Jelks verbally consented to the warrantless search. Upon searching Defendant–Appellant's bedroom, one of the parole officers observed a shotgun and two shells sitting on a shelf in an open closet. Le'Tasha Jelks subsequently signed a form granting the parole officers permission to search Defendant–Appellant's bedroom.

The government charged Defendant–Appellant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possessing a firearm that had been illegally altered, in violation of 26 U.S.C. § 5871, and possessing a firearm that was not registered to him in the National Firearm Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Defendant–Appellant moved to suppress the shotgun and shells, arguing that the warrantless search was unlawful. The government opposed Defendant–Appellant's motion, arguing that the warrantless search was lawful because it was a parole search. In the alternative, the government argued that Le'Tasha Jelks consented to the warrantless search of her father's bedroom. The district court held that the search was not a lawful parole search because Mooney did not have reasonable suspicion to believe that Defendant–Appellant

was in violation of the terms of his parole. However, the court denied Defendant–Appellant's motion on the basis that Le'Tasha Jelks voluntarily consented to the warrantless search. The district court concluded that Mooney's explanation of her authority to search Defendant–Appellant's residence was not "misleading or coercive."

The jury convicted Defendant–Appellant on all counts. The district court sentenced him to terms of 120 months imprisonment on Counts One and Three, to run concurrently, and a term of 30 months imprisonment on Count Two, to run consecutively to the other terms. The district court also ordered that Defendant–Appellant's 150 month term of imprisonment run consecutively to his undischarged state term of imprisonment. Defendant–Appellant now appeals the district court's judgment, arguing that: 1) Le'Tasha Jelks did not voluntarily consent to the search, because she consented only after Mooney misrepresented her authority to search Defendant–Appellant's bedroom; 2) the district court failed to consider the relevant factors set forth in 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3 when it ordered Defendant–Appellant's federal sentence to run consecutively to his undischarged state term of imprisonment; and 3) the government presented insufficient evidence to establish that Defendant–Appellant knowingly possessed the firearm and ammunition.

The district court held that "the consent to search given by Ms. Jelks was voluntarily given and not the product of duress or coercion." However, the factual basis for the district court's finding is unclear from the record, as the court did not discuss the totality of the circumstances warranting such a finding. Moreover, at the time of the district court's ruling, it did not have the benefit of the New York State Division of Parole, Policy and Procedures Manual, which governs parole officers' visits to the

homes of parolees. The manual is now part of the record, pursuant to this Court's remand order of July 30, 2002.

Accordingly, we remand this case to the district court for additional fact-finding and reconsideration of whether Le'Tasha Jelks' consent was voluntary. *See, e.g., United States v. Mathurin,* 148 F.3d 68 (2d Cir.1998) (per curiam) (remanding case to district court for additional fact-finding without vacating defendant-appellant's conviction). The district court should consider the totality of the circumstances surrounding Ms. Jelks' consent, taking into account whether Mooney's representation of her authority to search Defendant–Appellant's residence was incorrect or misleading and, if so, whether Ms. Jelks' consent was nonetheless voluntary. We express no view on this issue. We note that while Mooney told Ms. Jelks that parole officers could search a parolee's residence "any time [they] felt that there was a need to do so," the parole manual requires that officers have "an articulable reason for conducting the search that is reasonably related to the circumstances of the particular case and rationally related to the officer's duty to supervise the releasee."

The district court should also consider the factors delineated in *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In particular, the district court should consider Le'Tasha Jelks' subjective understanding of the circumstances and of her ability to withhold consent, based upon considerations such as her age and education, as well as the fact that she had given birth four days prior to the search. Moreover, the district court should consider the objective circumstances surrounding the encounter, *viz.,* the fact that three parole officers confront-ed Ms. Jelks in her home at night, and the parole officers' actions in obtaining Ms. Jelks' consent.

Finally, the district court should consider the significance *vel non* of the parole manual. We note that whether the search could be justified as a parole search, as well as the district court's finding that Mooney had no reasonable suspicion to believe that Defendant–Appellant was in violation of the terms of his parole, are not on appeal. However, we do not foreclose the district court from reconsidering any issues it deems relevant.

We draw no conclusions concerning the nature of the search or the voluntariness of Le'Tasha Jelks' consent. Simply, we order the district court to consider Ms. Jelks' consent in light of the totality of the circumstances and explain the basis for its ruling. However, the district court will likely need to reopen the suppression hearing and take additional testimony in order to comply with this Court's instructions. Should the district court again conclude that Ms. Jelks' consent was voluntary, the present appeal will be reinstated, without the need for a new notice of appeal, upon notice by either party to this Court by letter that the district court has so ruled. The record on appeal shall be supplemented with the record of the proceedings and rulings on remand and shall be referred to this panel.

The matter is remanded for further proceedings in accordance with the foregoing. The mandate shall issue forthwith.